# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 8382 | **DATE** | **MAY 7, 2001** |
| **CASE TITLE** | UNITED STATES OF AMERICA v. PAUL L. GLOVER | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment [31-1] is granted. Defendant's motion to vacate sentence will be granted at the time of his resentencing. By May 30, 2001, the probation officer shall supplement the Presentence Report in 95 CR 40. Any sentencing memorandum by defendant or the government shall be filed by June 4, 2001. Sentencing hearing is set for June 6, 2001 at 1:30 p.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 6 number of notices | Document Number |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | MAY 0 8 2001 date docketed | |
| | Notified counsel by telephone. | | | | 35 |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | 5/7/2001 date mailed notice | |
| | Copy to judge/magistrate judge. | | | | |
| CW | courtroom deputy's initials | FB-7 FILED FOR DOCKETING 01 MAY -7 PM 4: 37 | Date/time received in central Clerk's Office | MQM mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | On Remand from the United States |
| | ) | Court of Appeals for the Seventh |
| Plaintiff, | ) | Circuit, No. 98-4021, there |
| | ) | heard on remand from the |
| v. | ) | United States Supreme Court, |
| | ) | No. 98-8576 |
| PAUL L. GLOVER, | ) | |
| | ) | No. 97 C 8382 |
| Defendant. | ) | (95 CR 40) |



## MEMORANDUM OPINION AND ORDER

Defendant Paul Glover was formerly the Vice-President and
General Counsel of the Chicago Truck Drivers, Helpers and
Warehouse Workers Union (Independent) (the "Union"). Defendant
was charged with a number of federal offenses involving a series
of investments that he arranged to be made with money from the
Union's benefit funds. He entered into these transactions on the
Union's behalf for the purpose of obtaining kickbacks for himself
and others. Defendant's first trial ended in a mistrial.
Following a second jury trial, defendant was found guilty of one
count of a conspiracy in violation of the Racketeer Influenced
and Corrupt Organizations Act, 18 U.S.C. § 1962(d); 11 counts of
soliciting and receiving kickbacks in violation of 18 U.S.C.
§ 1954; two counts of money laundering in violation of 18 U.S.C.

§ 1956(a)(1)(B)(i); and four counts of tax evasion in violation
of 26 U.S.C. § 7206.  Defendant was sentenced to concurrent terms
of incarceration with the longest term being 84 months.  The term
of incarceration is to be followed by three years' supervised
release.  Additionally, defendant was required to forfeit
$325,000.  Defendant's conviction and sentence were affirmed on
direct appeal, where he was represented by the same counsel who
represented him at trial.  See United States v. Glover, 101 F.3d
1183 (7th Cir. 1996) ("Glover I").  Two issues were raised on
direct appeal:  (1) whether the district court abused its
discretion by admitting portions of defendant's trial testimony
from his first trial instead of admitting all of his prior
testimony and (2) whether, pursuant to U.S.S.G. § 3C1.1, it was
appropriate to increase defendant's base offense level by two
levels for obstruction of justice.

Following the affirmance on direct appeal, pursuant to 28
U.S.C. § 2255, defendant timely moved to vacate his sentence.[1]
Defendant contended his guideline sentencing range was
incorrectly calculated because his money laundering offenses
should have been grouped with his conspiracy and kickback
offenses.  At the time of sentencing, it had been determined that
defendant's total offense level was 28 and his criminal history

---

[1]Defendant proceeded pro se, but he was an experienced
litigating attorney, at least as to civil proceedings.

was Category I for a guideline range of 78 to 97 months.  In his

motion, defendant alleged that grouping would have resulted in a

total offense level of 26 and a guideline range of 63 to 78

months, which would have resulted in a sentence of incarceration

of 6 to 21 months less than the 84 months to which he had been

sentenced.  In the presentence report ("PSR"), the probation

officer had recommended grouping all the offenses, but the

government successfully argued otherwise.  In his § 2255 motion,

defendant further alleged that his attorneys provided ineffective

assistance by failing to adequately argue the grouping issue at

the time of sentencing and by failing to raise the issue at all

on direct appeal.  In arguing that grouping was appropriate,

defendant relied in part on United States v. Wilson, 98 F.3d 281

(7th Cir. 1996) ("Wilson I"), which was issued after defendant's

direct appeal was argued, but approximately one and one-half

months before Glover I was issued.

In response to the § 2255 motion, the government

contended that defendant's attorneys were not ineffective because

they had adequately urged grouping at the time of sentencing and

were not ineffective for failing to raise the issue on appeal

because, according to the government, the Seventh Circuit had not

yet ruled on the issue and all other circuits had reached

holdings that grouping of money laundering with other offenses

was inappropriate.  As to the prejudice prong of an ineffective

assistance of counsel claim, the government contended that a one-or-two-level decrease to the offense level was insufficient to satisfy the prejudice prong. The government made no argument that grouping was improper following Wilson I, but did contend that grouping would result in a total offense level of 27 (not 26) and a guideline range of 70 to 87 months.

In ruling on the § 2255 motion, this court rejected the government's contention that grouping would have resulted in only a one-level change. United States v. Glover, 1998 WL 611451 *1 & n.1 (N.D. Ill. Sept. 8, 1998) ("Glover II"). The government's brief was construed as containing an implicit concession that, in light of Wilson I, grouping was appropriate. See Glover II, 1998 WL 611451 at *1. However, it was unnecessary to decide whether counsel's performance was deficient at sentencing or on appeal, because it was held that defendant could not satisfy the prejudice prong. Following Seventh Circuit precedent, see Martin v. United States, 109 F.3d 1177, 1178 (7th Cir. 1996), cert. denied, 522 U.S. 931 (1997); Durrive v. United States, 4 F.3d 548, 551 (7th Cir. 1993), it was held that the two-level adjustment to defendant's offense level was not significant enough to satisfy the prejudice prong of an ineffective assistance of counsel claim. Id. at *2-3.

Still proceeding pro se, defendant appealed the denial of § 2255 relief. The government's brief before the Seventh Circuit

focused entirely on whether the prejudice prong could be satisfied by the potential decrease in defendant's sentence.  See Glover v. United States, 2000 WL 1673207 *1a-21a (U.S. Oct. 27, 2000) (petitioner's reply brief, appendix A[2]).  See also Glover v. United States, 121 S. Ct. 696, 699-700 (2001) ("Glover IV").  On direct appeal before the Seventh Circuit, the government made no argument that grouping would have resulted in an increase in the guideline range, nor did it repeat its argument that there would be only a one-level decrease.  The Seventh Circuit affirmed on the ground that, under its precedents, the potential decrease in defendant's sentence was not sufficiently significant to satisfy the prejudice prong. Glover v. United States, 182 F.3d 921, 1999 WL 511523 (7th Cir. July 15, 1999) (unpublished order).

The Supreme Court granted certiorari.[3]  Before the Supreme Court, the government conceded that the Seventh Circuit's rule that satisfying the prejudice prong requires a significant change in a sentence was inconsistent with Supreme Court precedent.  See Glover v. United States, 2000 WL 1469341 *18-24 (U.S. Sept. 27, 2000) (respondent's brief) ("Resp. Br.");

---

[2]The government's brief before the Seventh Circuit was provided as an appendix to Glover's reply brief before the Supreme Court.

[3]Before the Supreme Court and on remand, defendant is represented by new counsel.

<u>Glover IV</u>, 121 S. Ct. at 700.  Instead, the government again argued, as it had in the district court, that counsel's performance was not deficient.  Resp. Br., 2000 WL 1469341 at *24-34.  For the first time, the government also argued that there was no prejudice because (a) defendant's offenses should not be grouped, <u>id.</u> at *38-44, and (b) even if they should be grouped under U.S.S.G. § 3D1.2(d), such grouping would have resulted in a total offense level of 30 and a lengthier guideline range, <u>id.</u> at *44-47.

As was conceded by the government, the Supreme Court held that the Seventh Circuit requirement of a significant change of sentence was error.  <u>Glover IV</u>, 121 S. Ct. at 700-01.  The Supreme Court declined to consider the arguments regarding counsel's performance, the appropriateness of grouping, or grouping's effects on the guideline range because these arguments had not been raised in nor passed upon by the Seventh Circuit and they were outside the questions presented by the petition for certiorari.  <u>Id.</u> at 701.  "Whether these issues remain open, and if so whether they have merit, are questions for the Court of Appeals or the District Court to consider and determine in the first instance."  <u>Id.</u>  The case was reversed and remanded for further proceedings consistent with <u>Glover IV</u>.

On remand before the Seventh Circuit, the government argued that the denial of § 2255 relief should be affirmed on the

same alternative grounds that were argued before the Supreme Court. Defendant requested that the case be remanded to the district court for expedited proceedings. Defendant represents that, without any change to his sentence, he is projected to complete his term of incarceration in January 2002. If successful on his § 2255 motion, he may have already fully served a new sentence of incarceration that might be imposed. On March 13, 2001, the Seventh Circuit issued the following order: "The Supreme Court having reversed the judgment of this Court and remanded this case for reconsideration in light of its opinion in Glover v. United States. This case is REMANDED for further proceedings consistent with the aforesaid Supreme Court opinion. Because of the possibility of mootness, the district court should expedite its reconsideration."

On remand before this court, the parties requested permission to file additional briefs rather than have this court rule upon the originally filed briefs. Defendant moved for summary judgment and the government again seeks to raise the alternative grounds for affirmance. As to the government's contentions regarding lack of prejudice, defendant contends these arguments are waived because not raised until the case was before the Supreme Court and, as to the contention that grouping results

in a higher sentence, also waived because it was not raised at the time of sentencing.[4]

In Wilson I, defendant Wilson was found guilty of both mail fraud and money laundering. Calculated separately, each had an offense level of 23, with the money laundering calculation being based solely on the amount of money laundered, not on the additional amounts involved in the mail fraud. Pursuant to U.S.S.G. § 3D1.4, two levels were added for having multiple offenses. Also, three levels were subtracted for acceptance of responsibility for a total offense level of 22 and a guideline range of 41 to 51 months. Wilson was sentenced to 51 months' incarceration. See Wilson I, 98 F.3d at 282. On direct appeal, it was held that Wilson's mail fraud and money laundering offenses should have been grouped together pursuant to § 3D1.2(d) and the case was remanded for resentencing. Id. at 283-84. On remand, the district court determined that, once grouped under § 3D1.2(d), mail fraud became relevant conduct for the money laundering offense and therefore the offense level for money laundering was computed using a higher dollar figure for the value of the laundered funds, that is by also including the amounts involved in the mail fraud. See U.S.S.G. § 2S1.1(b)(2). Thus, on remand, Wilson's total offense level was 25 which

---

[4]The case became fully briefed before this court on April 25, 2001.

produced a guideline range of 57 to 71 months. Wilson was
sentenced to 71 months' incarceration, 20 months longer than
before the remand. See United States v. Wilson, 131 F.3d 1250,
1251 (7th Cir. 1997) ("Wilson II"). Wilson again appealed and
Wilson II holds that the government waived the contention that
there was additional relevant conduct for the money laundering
offense because the government did not raise such an objection
before the first sentencing. Id. at 1253-54. See also United
States v. Wyss, 147 F.3d 631, 633 (7th Cir. 1998). Wilson II
specifically holds that it did not matter that the district court
originally held otherwise as to grouping because the same
relevant conduct arguments could have been made regardless of the
ruling on grouping. See Wilson II, 131 F.3d at 1253. As regards
the government's present contention that grouping under
§ 3D1.2(d) would have resulted in a higher guideline range,
Wilson II is directly on point. The government is precluded from
presently raising that contention.

The issue of whether grouping is appropriate is in a
different posture. The government did make such an argument at
the time of sentencing and this court ruled in the government's
favor based on the then-existing precedents that were cited.
However, in response to defendant's § 2255 motion, the government
made no such argument in light of the then-existing Seventh
Circuit case law and this court construed the government's brief

as containing an implicit concession that grouping was appropriate in light of <u>Wilson I</u>. <u>See</u> <u>Glover II</u>, 1998 WL 611451 at *1. On the § 2255 appeal, there was also no such argument made to the Seventh Circuit. The argument was raised for the first time before the Supreme Court.

The issues available on remand may be limited by directions contained in the mandate of the higher court. <u>United States v. Polland</u>, 56 F.3d 776, 777-78 (7th Cir. 1995). Here, though, the Supreme Court left it to this court or the Seventh Circuit to determine whether the additional issues "remain open" and, "if so," to address the merits. <u>Glover IV</u>, 121 S. Ct. at 701. The Seventh Circuit's judgment left it for this court to decide that issue in the first instance. The mandate itself, therefore, does not limit the issues that may be considered. Instead, rules of law of the case and waiver must be considered. <u>See</u> <u>Polland</u>, 56 F.3d at 779 & n.1; <u>Shore v. Warden, Stateville Prison</u>, 942 F.2d 1117, 1123-24 (7th Cir. 1991), <u>cert. denied</u>, 504 U.S. 922 (1992); <u>Heller International Corp. v. Sharp</u>, 1994 WL 386421 *5 (N.D. Ill. July 19, 1994). The law already established on a prior appeal may be reconsidered in only limited circumstances analogous to grounds for granting relief under Fed. R. Civ. P. 60(b). <u>See</u> <u>Barrow v. Falck</u>, 11 F.3d 729, 731 (7th Cir. 1993); <u>Shore</u>, 942 F.2d at 1123-24.

When the § 2255 motion was originally before this court, the government made no argument that defendant could not have been prejudiced because grouping was not appropriate. On appeal to the Seventh Circuit, this contention was not advanced as an alternative ground for affirmance. Ordinarily, failing to raise an alternative ground for affirmance on appeal precludes raising that ground on remand. Barrow, 11 F.3d at 730-31; Health Care Service Corp. v. Brown & Williamson Tobacco Corp., 208 F.3d 579, 581 (7th Cir. 2000). Also, failing to raise an issue in the district court precludes raising it on appeal. United States v. Sertich, 95 F.3d 520, 526 (7th Cir. 1996), cert. denied, 519 U.S. 1113 (1997). Here, the government's failure to raise the issue when the case was first before the district court and first on appeal to the Seventh Circuit waives the issue for purposes of remand absent special circumstances. Walsh v. Mellas, 837 F.2d 789, 799-800 (7th Cir.), cert. denied, 486 U.S. 1061 (1988); Heller, 1994 WL 386421 at *5. The government does not point to any circumstances that prevented it from raising this issue earlier than the Supreme Court appeal nor does it point to any other circumstances that would justify now raising the issue. The argument that, following the Seventh Circuit decision in Wilson I, grouping would be inappropriate is waived.

But even if the merits of the issue should be reached, the government's contention lacks merit. Both at the time of

sentencing and presently, § 3D1.2(d) provided: "All counts involving substantially the same harm shall be grouped together into a single Group.  Counts involve substantially the same harm within the meaning of this rule: . . . (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."  Wilson I involved mail fraud and money laundering.  The Seventh Circuit found it particularly appropriate to group those charges because the money laundering helped to perpetuate the mail fraud scheme, id., 98 F.3d at 283-84, both through an effort to conceal the fraud and as a means of paying off earlier investors in a Ponzi fashion, see id. at 282-83.  The Seventh Circuit also noted that, without the fraud there would have been no funds to launder.  Id. (quoting United States v. Mullens, 65 F.3d 1560, 1564 (11th Cir. 1995), cert. denied, 517 U.S. 1112 (1996)).  Additionally, it noted that mail fraud and money laundering were included in § 3D1.2's list of offenses that could be grouped and that both involved determining the offense level largely based on the total amount of harm or loss.  Id. at 283.  Wilson I also notes that, where proceeds of a scheme are laundered in order to conceal the nature of the transaction, the victim of the scheme is also a victim of

the money laundering.  Id.  In United States v. Emerson, 128 F.3d
557, 564-66 (7th Cir. 1997), the Seventh Circuit followed
Wilson I.  In Emerson, all the mail fraud offenses were completed
prior to the money laundering, so arguably the money laundering
did not perpetuate or promote the fraud.  See Emerson, 128 F.3d
at 565.  However, unlike Wilson who pleaded guilty to violating
the concealment prong of money laundering, Emerson was found
guilty under the promotion prong.  Thus, even though Emerson's
money laundering did not actually perpetuate the fraud, Emerson
had intended to use it for that purpose.  See id. at 565-66.
Grouping was held to be appropriate.

Wilson I and Emerson hold that money laundering that
actually does or is intended to promote a related offense should
be grouped with the other offense under § 3D1.2(d).  The cases do
not reach the issue of whether money laundering that is not
intended to promote the offense can also be grouped under that
subsection.  Nor do they resolve the question of whether grouping
would be appropriate under other subsections of § 3D1.2.  In the
present case, defendant was charged with engaging in a RICO
conspiracy which involved receiving kickbacks from persons who
did business with Union benefit funds that defendant controlled
or influenced.  Most of the kickbacks were paid in cash, but some
were paid by check.  Laundering five checks is the conduct
underlying the two money laundering counts and is also charged as

part of the conspiracy and as racketeering acts. The checks were proceeds of the kickback scheme and were laundered in order to continue to conceal the kickback scheme. Subsequent to laundering the checks, defendant received additional cash kickbacks from the same payer, Susan Bennett. Additionally, attempting to influence the grand jury testimony of a currency exchange employee who assisted in the laundering is also charged as a racketeering act. Because of a witness's ability to identify Bennett, the witness's testimony went to the kickback charges as well as the laundering charges.

While there is no evidence that the laundered funds were reinvested in the scheme as happened in <u>Wilson I</u>, like <u>Wilson I</u> laundering was a means of concealing the kickback scheme so that it could and did continue. Since the laundered funds were proceeds of the kickback scheme, the Union benefit funds were victims of both the kickbacks and laundering, both offenses are listed in the guideline and the applicable guidelines base the offense level largely on the value of kickbacks or money laundered, and the laundering was done in order to conceal and thus perpetuate the kickback scheme, grouping under § 3D1.2(d) is appropriate. Alternatively, case law supports grouping under § 3D1.2(b). <u>See</u> <u>United States v. Cusumano</u>, 943 F.2d 305, 313-14 (3d Cir. 1991), <u>cert. denied</u>, 502 U.S. 1036 (1992).

As discussed above, had the issue been raised on direct appeal, it would have been held that the money laundering and kickback offenses should be grouped and the government would have been precluded from arguing that grouping resulted in a higher guideline range. Defendant satisfies the prejudice component of an ineffective assistance of counsel claim. It still must be considered whether counsel's performance was deficient.

Defendant must also show "that his counsel's performance was constitutionally deficient, 'meaning that the performance fell below the legal profession's objective standards for reasonably effective representation.'" Anderson v. Sternes, 243 F.3d 1049, 1057 (7th Cir. 2001) (quoting United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991), cert. denied, 502 U.S. 1116 (1992)). The performance of counsel is "insufficient when counsel omits a 'significant and obvious issue' without a legitimate strategic reason for doing so." Howard v. Gramley, 225 F.3d 784, 790 (7th Cir. 2000) (quoting Mason v. Hanks, 97 F.3d 887, 893 (7th Cir. 1996)). The adequacy of the attorney's arguments must be viewed from the perspective of the existing precedents at the time, not based on the hindsight of later decisions. Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir.), cert. denied, 510 U.S. 852 (1993). "The Sixth Amendment does not require counsel to forecast changes or

advances in the law, or to press meritless arguments before a

court." Id.

> As to the representation on appeal, the court must
>
> > decide whether it was in the realm of competent
> > appellate representation to decline to raise a
> > particular point on appeal, considering both the
> > arguments that might be made and the governing
> > standard of review. Assuming that a competent
> > lawyer would have taken an appeal at all (a
> > question we need not consider here, since there
> > was no threat of a sentence-enhancing remand that
> > might make the risks of an appeal outweigh its
> > potential benefits), we evaluate counsel's
> > performance by looking at the issues that the
> > defendant had available and determining whether
> > counsel's choice of the best of them represented
> > the same kind of strategic choice we permit for
> > trial decisions.

Howard, 225 F.3d at 790-91. An appellate attorney should be

selective in the issues raised and it is not good appellate

advocacy to raise every possible argument no matter how weak.

However, where only one or two issues were actually raised on

appeal, those issues will not be lost amid the briefing nor page

limitations reached by adding one or two more issues. See id.

at 791. "Significant issues which could have been raised should

. . . be compared to those which were raised. Generally, only

when ignored issues are clearly stronger than those presented,

will the presumption of effective assistance of counsel be

overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

In the PSR, the probation officer recommended grouping

all the offenses pursuant to § 3D1.2(c). The government filed a

position paper in which it devoted ten pages to the grouping

issue.  The probation officer provided an addendum to the PSR in

which she continued to recommend grouping and to which she

attached the government's position paper.  Although the

disagreement had been flagged by the probation officer and

counsel for defendant received the government's position paper

approximately two weeks before the date of sentencing, there is

no indication that counsel did any research or preparation as to

the grouping issue.  Counsel did not file any written opposition

and when questioned about the issue at the sentencing, counsel's

entire response was as follows:

> THE COURT:  . . . The first question is
> grouping, the probation officer has grouped all
> of the offenses together rather than separately.
> Mr. Murtaugh, do you want to comment on
> that?
>
> MR. MURTAUGH:  No, your Honor.  I just think
> it's appropriate.  It's one common—if the jury
> was and did believe apparently that it was one
> joint effort by Johnson and Mr. Glover, I think
> that all of the transactions that the government
> asserts should be considered individually ought
> not be considered individually.  I think these
> are appropriately grouped.

Sept. 21, 1995 Tr. at 3-4.

In its position paper, the government correctly

represented that there was no Seventh Circuit case concerning

grouping of money laundering offenses.  It cited cases from other

circuits holding that, in those cases, grouping other offenses

with money laundering was not appropriate. However, if
defendant's counsel had researched the issue, he would have found
circuit and other cases supporting grouping other analogous
offenses with money laundering. See, e.g., United States v.
Leonard, 61 F.3d 1181, 1185-86 (5th Cir. Aug. 14, 1995) (mail and
wire fraud); Cusumano, 943 F.2d at 313-14 (kickbacks); United
States v. Gray, 1993 WL 379184 *1 (E.D. Pa. Sept. 24, 1993),
aff'd by unpublished order, 47 F.3d 1162 (3d Cir.), cert. denied,
515 U.S. 1126 (1995) (mail fraud); United States v. Piervinanzi,
1992 WL 88207 *3 (S.D.N.Y. April 17, 1992), aff'd by unpublished
order, 983 F.2d 1047 (2d Cir. 1992) (bank fraud).[5] A minimally
competent attorney would have found all or some of these cases
and would have argued that the cases relied upon by the
government were distinguishable because the money laundering in
those cases was not as intertwined with the other offenses as
were defendant's money laundering and kickback offenses.
Counsel's conclusory and fumbling response, which appears to have
been made off the cuff without any significant preparation, fell
outside the wide range of competent representation. Counsel's
performance at sentencing was deficient.

---

[5]Prior to the filing of the opening brief on appeal,
there was at least one more appellate case favoring grouping of
other offenses with money laundering. See Mullen, 65 F.3d at
1564 (11th Cir. Oct. 10, 1995) (mail and wire fraud).

Arguably, even if counsel had cited the additional cases and made an adequate argument, this court may still have reached the same conclusion in light of the existing precedents. However, because counsel's performance on appeal was also deficient, it need not be decided whether there was a reasonable probability of a different outcome in the trial court if not for counsel's deficient representation.

On appeal, counsel raised two issues. One issue was whether the district court abused its discretion by admitting portions of defendant's trial testimony from his first trial instead of admitting his entire prior testimony. The Seventh Circuit found this argument to be weak.

> As appealing as Glover's argument may be in the abstract, however, in this case he has failed to point to any tangible evidence that he was denied a fair trial because the district judge refused to admit the entire transcript of his earlier testimony. Indeed, Glover has failed to show how the record supports the basic premise underlying his argument, namely, that the judge excluded the transcript merely because of its length, without taking into consideration the impact of that ruling on the fairness of Glover's trial. As we have already observed, Glover has not even demonstrated that the threshold criteria for Rule 106 admissibility, such as relevance, were met here. Cf., e.g., Walker, 652 F.2d at 710, 713 (defendant established threshold criteria for admission of proffered evidence); Sutton, 801 F.2d at 1369 (same). For a stronger reason, then, his claim that he was denied a fair trial because the judge wrongly excluded Rule 106 evidence proves to be wholly unfounded.

Glover I, 101 F.3d at 1192.

The second issue raised on direct appeal was whether, pursuant to U.S.S.G. § 3C1.1, it was appropriate to increase defendant's base offense level by two levels for obstruction of justice. Such an argument could only succeed if the district court's finding was clear error. As to this contention, the Seventh Circuit stated: "In making these findings, the judge thus complied in every respect with the requirements of Dunnigan; moreover, we discern no error, clear or otherwise, in the judge's factual determinations. As in United States v. Jones, 983 F.2d 1425 (7th Cir. 1993), this is plainly not a case for giving Glover 'the benefit of the doubt, as we would if this were a close call.' Id. at 1431; see U.S.S.G. § 3C1.1, comment. (n.1)." Glover I, 101 F.3d at 1193.

The two issues actually raised on direct appeal were weak. Unlike the issues actually raised which had deferential standards of review, the question of whether the kickback and money laundering charges should be grouped would have been reviewed de novo. See Wilson I, 98 F.3d at 282; Mullens, 65 F.3d at 1564. Also, since only two other issues had been raised, it would not have been excessive to add one more issue. Moreover, in light of the split of authority within the other circuits and possible factual distinctions, the grouping issue clearly appeared to be a stronger argument than the two that were actually raised. There was no controlling authority in the

Seventh Circuit, but there was supporting authority in other circuits. Therefore, this was not a situation where counsel would have been required to forecast changes or advances in the law; supporting case law already existed. The government speculates that failure to raise the grouping issue was a competent strategic decision made to avoid a possibly higher sentence if grouping were applied. There is, though, nothing to support that such a decision was made. As previously discussed, Wilson II clearly holds that an increased sentence on remand would be improper and therefore should not have been a concern of competent counsel. The government points out, though, that Wilson II was decided after Glover's direct appeal. The waiver rule applied in Wilson II, however, was clearly established prior to both Wilson II and Glover's direct appeal. See Polland, 56 F.3d at 779; Barrow, 11 F.3d at 730-31; Walsh, 837 F.2d at 799-800; Heller, 1994 WL 386421 at *5. It apparently was so well established that Wilson II did not even find it necessary to cite any waiver case in support of its decision. See Wilson II, 131 F.3d at 1253-54. There is nothing to support that the failure to raise the grouping issue on direct appeal was a strategic decision to avoid the possibility of a higher sentence and, if it was, it would not have been competent strategic advice. Counsel's failure to raise the grouping issue in the appellate

briefs fell outside the wide range of competent appellate representation.

Even if it was not deficient representation to fail to raise the grouping issue in the opening brief on direct appeal, the question would still exist of whether counsel's performance should be deemed incompetent for failing to raise the grouping issue when Wilson I was issued after oral arguments in Glover's direct appeal. The parties do not cite any case law involving such a situation. The only published case found by this court was Hallmark v. Martin, 112 F. Supp. 2d 1122, 1139-40 (N.D. Okla. 2000).[6] After Hallmark's state court appeal was briefed, the Oklahoma Court of Criminal Appeals issued Flores v. State, 896 P.2d 558, 562 (Okla. Crim. App. 1995), which held that the same presumption of innocence jury instruction that was used in Hallmark's case was error. There was no ruling in Hallmark's appeal for ten months after Flores was issued. Nevertheless, Hallmark's appellate counsel did not attempt to supplement the appellate record to raise the Flores issue. In the federal

---

[6]Hallmark follows two unpublished Tenth Circuit decisions that reach the same conclusion. See Burton v. Martin, 161 F.3d 17, 1998 WL 694531 *1 (10th Cir. Oct. 6, 1998) (unpublished opinion); Hampton v. Scott, 185 F.3d 874, 1999 WL 436275 *5-6 (10th Cir. June 29, 1999) (unpublished opinion). Tenth Circuit Rule 36.3 provides that unpublished decisions are not binding precedent and that citations to unpublished decisions are "disfavored. But an unpublished decision may be cited if (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (2) it would assist the court in its disposition."

habeas case, it was held that this did not constitute ineffective assistance of appellate counsel because the rules of the Oklahoma Court of Criminal Appeals did not permit supplementing briefs to add new issues. Hallmark, 112 F. Supp. 2d at 1140.

The government contends that the Seventh Circuit would not have permitted Glover to raise a new issue when Wilson I was issued after oral arguments. However, the Seventh Circuit sometimes permits new arguments to be raised after oral argument, see, e.g., American Agriculture Movement, Inc. v. Board of Trade of Chicago, 977 F.2d 1147, 1165 n.10 (7th Cir. 1992), particularly where it involves new matters not previously available, see, e.g., Turner v. Chicago Housing Authority, 969 F.2d 461, 464 (7th Cir. 1992). The Seventh Circuit has permitted new issues to be raised after oral argument where the new issues are based on a new Supreme Court case. See, e.g., United States v. Stott, ___ F.3d ___, 2001 WL 286995 *17-20 (7th Cir. March 26, 2001). The Seventh Circuit has even permitted new arguments to be made in a petition for rehearing based on the issuance of a new Supreme Court opinion. See United States v. Berry, 571 F.2d 2, 3 n.1 (7th Cir.), cert. denied, 439 U.S. 840 (1978). Where, however, the new issue to be raised is one that could have been raised in the initial briefs, the Seventh Circuit is less likely to permit the new argument to be made. See, e.g., Rosario v. Livaditis, 963 F.2d 1013, 1022 n.4 (7th Cir. 1992),

cert. denied, 506 U.S. 1051 (1993). It is likely that the
Seventh Circuit would have permitted supplemental briefs to be
filed if Glover had sought to raise the grouping issue following
the issuance of Wilson I. If such a motion to supplement were to
have been denied, it would likely have been because enough
precedents existed for counsel to have been able to raise the
issue in the briefs. But if that is the case, then counsel's
performance would have been deficient for having failed to raise
the issue in the briefs.

Wilson I is close on point to the grouping issue in the
present case and appellate counsel should have been aware of its
issuance. Not only was it a published decision in the circuit in
which counsel practices, the opinion also received press in the
Chicago Daily Law Bulletin. Counsel's performance was deficient
for failing to attempt to raise the grouping issue after the
issuance of Wilson I.

As previously discussed, counsel's performance fell
outside the wide range of competent representation for failing to
adequately argue the grouping issue at sentencing and for failing
to raise the issue on direct appeal. Had counsel adequately
raised the issue, there is a more than reasonable probability
that this court or the Seventh Circuit would have ruled in his
favor on the grouping issue. Therefore, defendant is entitled to
relief on his § 2255 motion. As previously discussed,

considering the issue on its merits, the money laundering and kickback offenses should have been grouped. That results in a total offense level of 26 and a guideline range of 63 to 78 months. Defendant will be resentenced on this basis.

Sentencing is set for June 6, 2001 at 1:30 p.m. The parties shall make the necessary arrangements so that defendant is present for the sentencing hearing. No later than May 30, 2001, the probation officer shall file a supplement to the PSR containing any additional information believed to be pertinent. If the parties desire to file any written sentencing memoranda, they shall do so by no later than June 4, 2001.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [31-1] is granted. Defendant's motion to vacate sentence will be granted at the time of his resentencing. By May 30, 2001, the probation officer shall supplement the PSR in 95 CR 40. Any sentencing memorandum by defendant or the government shall be filed by June 4, 2001. Sentencing hearing is set for June 6, 2001 at 1:30 p.m.

ENTER:

_William T. Hart_

UNITED STATES DISTRICT JUDGE

DATED: MAY 7 , 2001